UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JILL A. FERREIRA,

               Plaintiff,

v.                                    Case No. 8:18-cv-524-T-30SPF

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on referral by the Honorable James S. Moody, Jr. for a Report and Recommendation on the parties' cross motions for summary judgment and the respective responses thereto. (Docs. 26, 28, 32, 33). At issue in this case is whether Defendant The Prudential Insurance Company of America ("Defendant") reasonably and correctly denied Plaintiff Jill A. Ferreira's ("Plaintiff") claim for long-term disability ("LTD") benefits under the Frontier Communications Corporate Services Inc. Plan for Group Insurance (the "Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* For the reasons set forth below, it is recommended that Defendant's Motion for Summary Judgment (Doc. 28) be granted, and Plaintiff's Motion for Summary Judgment (Doc. 26) be denied.

# I.   BACKGROUND

## a.  The Plan[1]

The Plan, sponsored by Frontier Communications Corporation ("Frontier" or "Employer"), is governed by ERISA.  The Plan documents vest Defendant with discretion to decide LTD claims.   The Frontier SPD identifies Defendant as the Claims Administrator for claims and appeals and provides that Defendant:

> has been delegated the complete discretionary fiduciary responsibility for all disability determinations by the Plan Administrator to determine whether a particular eligible employee who has filed a claim for benefits is entitled to benefits under the Program, to determine whether a claim was properly decided, and to conclusively interpret the terms and provisions of the Program. Such determinations and interpretation shall be final and conclusive.

(AR 160).  The certificate provides that Defendant "as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.  The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." (AR 77).

---

[1] The Plan consists of the Frontier Communications Corporate Services Inc. Plan for Group Insurance (the "WRAP plan"), the Frontier STD and LTD Summary Plan Description (the "Frontier SPD"), the Group Insurance Contract issued by Defendant to Frontier (the "group contract"), and the LTD booklet-certificate (the "certificate"). (AR 1-172 (citations to "AR" refer to bates-numbered pages contained in the administrative record filed by Defendant at Doc. 17)).

Under the Plan, a claimant is disabled when Defendant determines that:

- [she is] unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury;
- [she is] under the regular care of a doctor; and
- [she has] a 20% or more loss in [her] monthly earnings due to that sickness or injury.

(AR 52). "Material and substantial duties" means duties that are normally required for the performance of claimant's regular occupation and cannot be reasonably omitted or modified. (AR 52). The Plan explains that in evaluating whether a claimant can perform her "regular occupation," Defendant will look at her occupation "as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." (AR 52).

After 12 months of payments, a claimant is disabled when Defendant determines that due to the same sickness or injury:

- [she is] unable to perform the duties of any gainful occupation for which [she is] reasonably fitted by education, training or experience; and
- [she is] under the regular care of a doctor.

(AR 52).

The Plan further provides "[Defendant] will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from your doctors and doctors, other medical practitioners or vocational experts of [Defendant's] choice." (AR 52). The Plan also states "[Defendant] may require you to be examined by doctors, other medical practitioners or vocational experts of [Defendant's] choice." (AR 52). The Plan specifies that it is a claimant's responsibility to provide satisfactory proof

3

of her claim. (AR 61) (explaining benefits end when a claimant "fail[s] to submit proof of continuing disability satisfactory to [Defendant]").

### b. Plaintiff's Claim Under the Plan

Plaintiff worked for Frontier as a Cable Monitor and Dispatch Specialist, which is classified as a sedentary occupation.  (AR 830).  The material and substantial duties of this occupation include operating computer terminal equipment; interfacing with customers, technicians, managers and dispatchers; recording completion information on service orders and trouble reports; maintaining time reports; and monitoring and updating reports.  (AR 830).

In December 2015, Plaintiff had cervical surgery.  Plaintiff points out that on the "operative report is the comment that when decompression was completed, they checked the vertebral body (cervical) for stenosis (narrowing of the spinal cannel) or herniation" and found neither.  (Doc. 26 at 3).  She returned to work three months later and continued physical therapy as prescribed by her orthopedic surgeon, Thomas Tolli, M.D.  In May 2016, Plaintiff complained during a physical therapy session she felt a popping in her neck. (AR 428).  Plaintiff stopped working on May 31, 2016, due to cervical problems and subsequently filed an LTD claim under the Plan.  (AR 177, 180, 182, 188).

On August 25, 2016, Plaintiff underwent an MRI of her cervical spine ordered by Dr. Tolli.  Diagnostic reports of the August 2016 MRI were made by both Bruce Rodan, MD, a board certified diagnostic radiologist (dated August 25, 2016) and Richard Leverone, DC, a board certified radiologist (dated May 23, 2017) with both reports

4

indicating a small disk herniation at the C6/7 level and bulging disks at the C3/4 and C4/5 levels. (AR 428-29, 548-49). No impingement was mentioned in either report. On November 5, 2016, Plaintiff underwent an MRI of the lumbar spine. A diagnostic report from Dr. Rodan indicated a L3/4 level bulging disk, a L4/5 level herniated disk, and a L5/S1 level herniated disk with neural impingement. (AR 510-511).

Finally, Plaintiff was seen by Koco Eaton, MD, an orthopedic surgeon, on November 29, 2016, for right shoulder pain and left knee pain. (AR 441). Although the examination notes refer to a plan for an MRI of the shoulder and the knee and to follow-up with the results, there is no evidence the MRI was conducted. (AR 441).

As for Plaintiff's LTD claim, Defendant's medical expert, Mary Ryer, RN, conducted the initial clinical review of Plaintiff's medical records and concluded Plaintiff had the capacity for constant sitting with the ability to change position as needed for comfort; could occasionally lift up to 10 pounds; should avoid prolonged neck flexion/extension and repetitive neck movements; and had no restrictions in fine fingering, handling, and desk level reaching. (AR 827).

On January 3, 2017, Defendant's vocational consultant, Karin Pinske, MA, CRC, reviewed Plaintiff's claim to determine whether Plaintiff could still perform her regular occupation within the restrictions identified by Nurse Ryer. (AR 829-31). Pinske found, based on the reports of both Plaintiff and her Employer, that Plaintiff's regular occupation, as defined under the Plan, had the following physical requirements: occasionally lift/carry 10 pounds; exert 10 pounds on occasion; frequently lift/carry up to 10 pounds; constantly

5

sit; and occasionally stand, walk, sit/stand option. (AR 830). Pinske opined that Plaintiff could perform her occupation within the restrictions established by Nurse Ryer. (AR 830). Pinske further opined Plaintiff's occupation allowed her to occasionally alternate between sitting and standing and reasonably self-accommodate to avoid prolonged neck flexion/extension. (AR 831).

Based on its review of Pinske and Ryer's conclusions, Defendant found Plaintiff had the functional capacity to perform the material and substantial duties of her regular occupation. (AR 831-833). As such, Defendant denied Plaintiff's claim by letter dated January 5, 2017. (AR 750-56).

On January 3, 2017, Plaintiff submitted to Defendant the November 5, 2016, lumbar spine MRI diagnostic report by Dr. Rodan and a Capacity Questionnaire from Dr. Tolli dated September 30, 2016, in which he again asserted that Plaintiff had no work capacity. (AR 510-11, 457-58). Nurse Ryer reviewed these materials on January 11, 2017, but did not change her conclusions. While the MRI indicated Plaintiff had a bulging disk at L3/4 and herniated disks at L4/5 and L5/S1 with impingement at L5/S1, there was no documentation of impingement for L3/4 or L4/5. (AR 510-11, 836). In addition, Nurse Ryer noted Plaintiff had a history of low back pain and a diagnosed herniation from ten years ago. Nurse Ryer also concluded that Dr. Tolli's Capacity Questionnaire was inconsistent with both his own objective records and Plaintiff's self-reported activity. (AR 836). Defendant concluded the new information did not warrant a change in its determination and informed Plaintiff of that conclusion. (AR 760-61).

6

On June 30, 2017, Plaintiff appealed Defendant's decision arguing the objective diagnostic evidence showed she was disabled due to her cervical and lumbar spine, right shoulder, and left knee impairments.  (AR 434-36, 529-31).  Specifically, she reported being unable to sit for more than 15 minutes at a time and to type or use a mouse for more than 10 minutes at a time.   In addition, she submitted a May 16, 2017, letter from Dr. Tolli stating she was temporarily disabled (AR 445); the diagnostic report by Dr. Rodan of the August 25, 2016 MRI (AR 446-47); as well as the diagnostic report of the same August 25, 2016 MRI from Dr. Leverone (AR 453-54).  With her appeal, Plaintiff also submitted an employee work accommodation request in which she asked her Employer for a chair without arms, a telephone with a speakerphone, assistance typing or using the computer mouse and a sit/stand option.  (AR 439-40).

In response to Plaintiff's appeal, Defendant requested Plaintiff undergo an independent medical examination ("IME") with Lee Ann Brown, DO (board certified in physical medicine and rehabilitation and pain management) on September 6, 2017.  (AR 473-77).  Dr. Brown reviewed all of Plaintiff's medical records and performed a history and examination of Plaintiff.   (AR 473).   Dr. Brown disagreed with Plaintiff's accommodation request, stating "[Plaintiff] is able to sit for an eight-hour period and she is able to type, I do believe she will need breaks for typing throughout the day, but she is able to perform a sedentary- to light-duty job." (AR 475).  The IME further included the following findings:

7

- Intact sensation of lower extremities and left upper extremity;
- Upper and lower extremity muscle strength of 5/5;
- Normal gait;
- Functional cervical range of motion;
- Full range of motion in her shoulders with tenderness in the right occipital tendon;
- Full range of motion in the knee with mild tenderness;
- Limited range of motion of the cervical spine, which would restrict repetitive lifting overhead and continuous looking overhead for periods greater than 20 minutes;
- Impairment in right shoulder, which would restrict repetitive lifting with the right shoulder greater than 10 pounds throughout an 8 hour day without a break;
- Full grip strength;
- Full range of motion in her hands;
- No deformities in the hands or knees.

(AR 474-75).

Dr. Brown concluded that "[b]ased on the patient's physical examination, her MRI findings, and the surgical intervention, I do believe the patient is able to perform sedentary-to light-duty work full time." (AR 475). She further found "[Plaintiff] does not have any neurologic or loss of range of motion or significant deformities that prevent her from full-time work in a sedentary- to light-duty capacity." (AR 475). She additionally adjudged that "[Plaintiff] does not have any impairment with mobility. She does not require a cane. She is independent with self-care. She is independent with communication. She is independent with cognition. She is independent with transportation, mobility and driving." (AR 475). Consistent with Nurse Ryer's review, Dr. Brown found Plaintiff did not have any limitations in sitting, standing, walking, carrying, pinching, reaching, gripping or grasping. (AR 828, 475-76). Additionally, she concluded Plaintiff did not

8

have any difficulty with fine motor movement and exhibited the capacity to work an eight-hour day at a light duty status, while maintaining restrictions with repetitive overhead lifting or lifting greater than 20 pounds.  (AR 475-476).  Like Nurse Ryer, Dr. Brown found Dr. Tolli's opinions inconsistent with his own records.  (AR 828, 476).

Based on this analysis, Defendant affirmed its decision and informed Plaintiff by letter dated October 17, 2017. (AR 777-84). In its appeal decision letter, Defendant reinforced that Plaintiff's medical records confirmed she had normal sensation, normal neurological exams, and full motor strength in her arms and legs. (AR 781). It noted that these findings were consistent with that of the IME, which showed again Plaintiff had normal sensation, full motor strength in her arms and legs, normal gait, full range of motion in her neck, shoulders, hands and knees, and full grip strength. (AR 781). Defendant also noted Plaintiff was not restricted from sitting, standing, walking, carrying, pinching, reaching, gripping or grasping, and therefore had the capacity to perform the duties of her regular occupation. (AR 781-83).

## II.    APPLICABLE LAW

### a.  Summary Judgment Standard

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as matter of law. *See* Fed. R. Civ. P. 56(a) and (c). The plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing

sufficient to prove the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is inappropriate "[i]f a reasonable factfinder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact[.]" *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the record, viewed as a whole, could lead a reasonable factfinder to return a verdict for the non-movant. *Id.* In considering a motion for summary judgment, the non-movant's evidence is to be believed and all reasonable inferences drawn in its favor. *See Trucks Inc. v. United States*, 234 F.3d 1340, 1342 (11th Cir. 2000) (citing *Anderson*, 477 U.S. at 255).

In an ERISA benefit denial case, however, the district court acts more as an appellate tribunal and does not take evidence, but, instead, evaluates the reasonableness of an administrative determination taking into consideration the record reviewed by the plan administrator. *Crume v. Metro Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272-73 (M.D. Fla. 2006). As such, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Id.* at 1272 (citation and internal quotations marks omitted).

### b. ERISA

In the Eleventh Circuit, judicial review of a challenged benefits decision under ERISA is "limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). Based on the administrative record, the court must perform the following multi-step analysis:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355 (citation omitted).

In the court's initial *de novo* review, the plaintiff "bears the burden to prove that she is disabled." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008).

11

If the plaintiff does not carry her burden of proving a disability, then the administrator's decision was not "wrong," and the court ends its inquiry and enters summary judgment for the administrator. *See id*. at 1246-47. If the court reaches the "arbitrary and capricious" stage of review, the plaintiff bears the burden of showing that the administrator's decision was arbitrary and capricious. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195-96 (11th Cir. 2010). Pursuant to that standard, a court will affirm if the administrator's decision is reasonable given the available evidence, even though the court might have made a different decision if it had been the original decision-maker. *See Griffis v. Delta Family–Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984) (court in ERISA case "limited to determining whether [the administrator's decision] was made rationally and in good faith—not whether it was right"); *accord, e.g., Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) ("Under the arbitrary and capricious standard, it is not [the court's] function to decide whether [it] would reach the same conclusion as the Plan or even rely on the same authority.").

## III.    DISCUSSION

Plaintiff argues she is entitled to LTD benefits because she is covered under the policy and is disabled.  (Doc. 26 at 1).  Specifically, Plaintiff contends she meets the definition of disabled due to cervical surgery performed by Dr. Tolli on December 18, 2015, and the "subsequent problems in trying to recover from surgery" (AR 202; Doc. 26 at 2).  Plaintiff contends she is unable to perform the job due to neck, low back and left

knee pain and relies primarily on the opinion of her orthopedic surgeon, Dr. Tolli, and her subjective complaints of pain.

Defendant argues the objective evidence in the record undermines Plaintiff's claim, and Plaintiff clearly had the capacity to perform her sedentary occupation when Defendant denied her claim for LTD benefits. Defendant contends that, therefore, Plaintiff cannot establish Defendant acted unreasonably, as required under an abuse of discretion standard.

### a. Defendant's Decision is Not *De Novo* "Wrong"

The first step in reviewing an ERISA plan administrator's benefits decision requires the Court to "[a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (*i.e.*, the court disagrees with the administrator's decision)." *Blankenship,* 644 F.3d at 1355. To determine whether Defendant's decision was "wrong," the Court must examine the terms of the Plan and the administrative record to determine whether it agrees with Defendant's decision. *Glazer*, 524 F.3d at 1246. As such, no deference is afforded Defendant's decision. Instead, the Court is to "stand in the shoes of the administrator and start from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." *Stiltz v. Metro. Life Ins. Co.*, No. 1:05-CV-3052-TWT, 2006 WL 2534406, at *6 (N.D. Ga. Aug. 30, 2006), *aff'd*, 244 F. App'x 260 (11th Cir. 2007). For the following reasons, considering the materials available to Defendant when it made its denial decision in January 2017, and its decision on appeal in October 2017, Defendant's denial of LTD benefits was not *de novo* wrong. *Id.* at 1354.

13

Plaintiff argues she provided Defendant with written opinions from two board certified orthopedic doctors and two MRIs along with reports from two board certified radiologists, which show a herniated disk in the cervical area below the previous cervical surgery and a possible tear to a meniscus. (Doc. 26 at 7). She contends there is objective diagnostic evidence of the cervical problems that support the Plaintiff's reports of pain. Plaintiff's arguments, however, are without merit.

Neither of the two radiologists, Dr. Rodan nor Dr. Leverone, identified any medically necessary restrictions and/or limitations or opined that Plaintiff was disabled. (AR 453-54, 497-98). Similarly, Dr. Eaton, one of the orthopedic surgeons upon whom Plaintiff relies, never opined that Plaintiff was disabled nor did he identify any medically necessary restrictions and/or limitations. (AR 441). Only Dr. Tolli opined Plaintiff was disabled, but Dr. Tolli's opinion conflicts with Dr. Tolli's medical records. Dr. Tolli's progress notes from December 2015 through January 2017 repeatedly demonstrated that Plaintiff appeared comfortable and exhibited no evidence of pain behavior or acute distress; had no palpable tenderness or instability; had normal sensation and normal gait; and exhibited functional range of motion in her neck, full range of motion in her arms and legs, and full motor function. (AR 235-38, 277-89, 302-04, 412-14, 460, 466-70, 489-90). On July 25, 2016, Dr. Tolli restricted Plaintiff to light level activity, which is a more strenuous level than the sedentary level of her regular occupation. (AR 302-04, 830). During the March-July 2016 time frame, Plaintiff's physical therapy notes consistently documented increasing strength and decreased pain. (AR 244-71). Even when Plaintiff

14

reported an increase/worsening of neck pain on August 22, 2016, Dr. Tolli reported she appeared comfortable and showed no evidence of pain behavior or acute distress.  (AR 412-14).  On later visits during which Dr. Tolli opined that Plaintiff was unable to work, he did not describe any evidence of an increase in the severity of her symptoms or pain level.  (AR 306, 412-14, 457-58).

Each of the medical experts, Nurse Ryer and Dr. Brown, who reviewed Plaintiff's claim found Dr. Tolli's opinion to be unsupported by the objective medical records, including his own examination reports.   As such, Defendant reasonably rejected Dr. Tolli's opinions as unsupported by his own records.  *See Ray v. Sun Life & Health Ins. Co.*, 443 F. App'x 529, 533 (11th Cir. 2011) [2] (holding the administrator's decision was not *de novo* wrong where it failed to credit the opinion of plaintiff's treating doctor because it was inconsistent with his records and contrary to the opinions of two non-examining medical experts) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-34 (2003) (holding courts cannot "require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

physician's evaluation")); *Blankenship*, 644 F.3d at 1356 (finding it reasonable to credit the opinions of independent doctors over the opinions of treating physician where insurer thoroughly evaluated medical records and noted inconsistencies between the treating physician's medical records and opinion); *Howard v. Hartford Life & Accident Ins. Co.*, 929 F. Supp. 2d 1264, 1294, 1298 (M.D. Fla. 2013) (finding it was reasonable for administrator to give less weight to the opinions of the plaintiff's treating physicians where their records did not actually confirm any functional limitations in the plaintiff's ability to perform her occupation), *aff'd*, 563 F. App'x 658 (11th Cir. 2014).

Dr. Tolli's opinion appears to be based on Plaintiff's subjective complaints. Plaintiff's subjective complaints of pain, however, are not enough to establish that she was disabled under the Plan, and, in addition, Plaintiff failed to provide evidence that she was incapable of sedentary work because of her pain. *See Cusumano v. Cont'l Cas. Co.*, No. 6:07-CV-141-orl-22KRS, 2008 WL 1711405, at *7 (M.D. Fla. Apr. 10, 2008) (a claimant's "subjective complaints do not become objective simply because a doctor wrote them down"). "ERISA disability is not established merely by the existence of pain, even chronic pain, in the absence of proof that the claimant's pain actually precludes him or her from working." *Richey v. Hartford Life & Accident Ins. Co.*, 608 F. Supp. 2d 1306, 1310 (M.D. Fla. 2009). To be sure, despite her subjective complaints of pain and the alleged limitations that rendered her unable to perform her sedentary occupation, her self-reported daily activities indicated otherwise. Plaintiff reported being able to prepare meals, perform housework, drive up to 25 miles, and shop. (AR 294-96, 457-58). As such, it was not

16

unreasonable for Defendant to discount Plaintiff's self-reported symptoms, and the opinion of Dr. Tolli who relied on those self-reported symptoms in rendering his opinion of disabled, but instead to rely on the reviewing medical experts who found that evidence of significant functional impairment was lacking.

Plaintiff also seems to argue she is disabled because she may need surgery. (Doc. 26 at 8). Plaintiff contends "a bare examination [by the IME doctor] is certainly not sufficient to determine whether or not surgery is necessary especially by a doctor whose practice is dedicated to non-surgical treatment." (*Id.*). She continues that "[a]t some point, [Defendant] is responsible … to call for an independent medical evaluation that is technically capable of answering orthopedic questions in regards to consideration being given to additional surgeries." (*Id.*). Finally, Plaintiff asserts "the question is whether additional testing is needed to determine whether the new cervical disc requires surgery and/or additional testing is required to determine whether there is a tear to a meniscus." (*Id.*). Plaintiff asserts that this "failure of the carrier to address these issues by an outside doctor is an example of abuse of discretion." (*Id.*).

Plaintiff's attestation of potential surgery does not prove Plaintiff had any medically necessary restrictions or limitations that prevented her from performing her regular sedentary occupation at the time Defendant made its decision. *See Howard*, 929 F. Supp. 2d at 1295 ("[w]hile [plaintiff] provided objective test results indicative of degenerative disc disease, such findings do not establish that she was totally disabled and unable to perform her sedentary job"); *see also Sanzone v. Hartford Life & Accident Ins. Co.*,

17

No. 06-61135-CIV, 2008 WL 80984, at *11 (S.D. Fla. Jan. 3, 2008) ("whether Plaintiff is 'disabled' under the policy is not based on whether she has been diagnosed with a certain medical condition").   Plaintiff's speculation regarding a diagnosis or treatment for the diagnosis is insufficient to establish a bearing on Plaintiff's level of functionality.

Plaintiff also argues Defendant improperly relied on Dr. Brown's IME because it was not conducted by a surgeon or a radiologist.  (Doc. 32 at 3).  Plaintiff, however, provides no support under the law or the Plan for such a requirement.  Defendant was not obligated to conduct an IME, and the Plan provides Plaintiff may be required "to be examined by doctors, other medical practitioners or vocational experts of [Defendant's] choice." (AR 52).  As such, Plaintiff's argument is unpersuasive.

Plaintiff also takes issue with Dr. Brown's treatment of the Waddell signs, which are used in independent medical evaluations to determine symptom magnification.  (Doc. 26 at 6; Doc. 32 at 3).  Plaintiff points to the fact Dr. Brown indicates the Waddell signs were negative, which should be interpreted as Plaintiff's pain complaints being verifiable and not somatic or magnified, but Dr. Brown does not discuss or give any weight to this test.  As such, Plaintiff argues Defendant giving great weight to Dr. Brown's determination is unreasonable.[3]  (Doc. 26 at 6; Doc. 32 at 3).  While Dr. Brown acknowledged Plaintiff's

---

[3] Plaintiff fails to cite to any authority in support of this proposition.  In fact, the only authorities cited in Plaintiff's motion and response (Docs. 26, 32) are *Celotex Co. v. Catrett*, 106 S. Ct. 2548 (1986) (cited for the summary judgment standard of review) (Doc. 26 at 9) and, somewhat ironically, Local Rule 3.01(b), M.D. Fla. ("Each party opposing a motion or application shall file within 14 days after service of the motion or application

claim of chronic pain, she noted the medical records showed Plaintiff had functional cervical range of motion.  (AR 475).  In addition, she acknowledged that the results of the Waddell Test were negative, but, based on her own observations and her own personal exam, she found Plaintiff had slightly exaggerated her self-reports of pain (8 out of 10) on the tests she conducted.  (AR 475-76).  In fact, she noted Plaintiff did not display any pain behaviors during the IME.  (AR 474-76).  Moreover, Plaintiff does not explain how negative Waddell signs translate into a finding of disability under the Plan.  As discussed above, Plaintiff's subjective complaints of pain are not enough to establish she was disabled under the Plan.

Dr. Brown's findings are supported by Nurse Ryer's conclusion that the medical records contained evidence of symptom magnification.  (AR 827-29).  Specifically, Nurse Ryer found, despite Plaintiff's complaints of pain, Plaintiff had range of motion without pain, normal shoulder joint range with no impingement, normal strength and sensation, and no instability.  (AR 235-38, 281-82, 412-14, 827).  Nurse Ryer could not reconcile Plaintiff's reported increased pain to a level of 8/10 on August 22, 2016, with the fact that Dr. Tolli noted Plaintiff demonstrated no pain behavior or distress upon examination the same day.  (AR 412-14, 827).

---

a response that includes a memorandum of legal authority in opposition to the request, all of which the respondent shall include in a document not more than 20 pages.") (Doc. 32 at 3).

Finally, Plaintiff asserts Defendant did not adequately address her requests to her Employer for accommodations. (Doc. 26 at 5, 8).  Plaintiff's requests for workplace accommodations, however, are irrelevant to Defendant's benefits decision.  The Plan does not require Defendant to consider whether Plaintiff can perform her job without accommodations.  The Plan specifically defines "material and substantial duties" as those that cannot be "reasonably modified or omitted." (AR 52).  If reasonable accommodations are available that enable Plaintiff to do her job, then Plaintiff can still work in her regular occupation.

Here, both Nurse Ryer and Dr. Brown reviewed and analyzed Plaintiff's medical records and diagnostic imaging, Plaintiff's subjective complaints of pain, Plaintiff's self-reported level of activity, and Plaintiff's physical examinations.  (AR 827-29).  Based on this analysis, Nurse Ryer came to the reasonable conclusion that Plaintiff had the capacity for constant sitting with the ability to change position as needed for comfort; could occasionally lift up to 10 pounds; should avoid prolonged neck flexion and extension and repetitive neck movements; and had no restrictions for fine fingering, handling, and desk level reaching.  (AR 829).

Dr. Brown, likewise, concluded Plaintiff had the capacity for full-time sedentary or even light work after personally examining Plaintiff and evaluating her submissions. (AR 475).  This finding was not only consistent with Nurse Ryer's review (AR 828, 475-76), but it was also consistent with the objective findings of Dr. Tolli's physical examinations of Plaintiff.  (AR 459-60, 466-70, 475-76, 489-90).  As such, Dr. Brown

20

reasonably concluded that Plaintiff's herniated and bulging disks would not preclude Plaintiff from performing her occupation as Plaintiff had the capacity to sit, stand, walk, pinch, reach, grip or grasp without limitation.  (AR 457-60, 466-70, 489-90, 475-76).  In sum, both of Defendant's medical experts agreed that the objective medical evidence did not support a finding of disability.

Although Plaintiff points to various medical records and procedures in support of a disability, she fails to point to any evidence that she suffers from any limitation or restriction that would prevent her from performing any of the material and substantial duties of her sedentary occupation such that this Court would disagree with the administrator's decision.  In addressing Plaintiff's disability claim, Defendant reviewed all of Plaintiff's medical records and denied her LTD claim because it found she could perform her regular occupation, and the evidence decidedly supports Defendant's conclusion.  In sum, Defendant's denial of Plaintiff's claim for LTD benefits was not wrong.  Concomitantly, Plaintiff's numerous challenges to that decision are unavailing.

### b.  Reasonable Grounds Supported Defendant's Decision

Even assuming *arguendo* that Defendant's discretionary benefits decision was *de novo* wrong, Defendant's decision to deny Plaintiff LTD benefits was reasonable. *See Blankenship,* 644 F.3d at 1354 (if the administrator's decision is *de novo* wrong, and the administrator was vested with discretion in reviewing claims, step three  requires the court to determine whether reasonable grounds supported the decision); *see also Eady v. Am. Cast Iron Pipe Co.,* 203 F. App'x 326, 327-28 (11th Cir. 2006) (the Court will review a claim

21

under the deferential standard of review where the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan).[4]   Reasonableness is determined based on the facts known to the administrator at the time the decision was made. *Thomas v. Hartford Fire Ins. Co.,* No. 6:07–cv–1983–Orl–28GJK, 2009 WL 3200954, at *7 (M.D. Fla. Sept. 30, 2009).   Plaintiff must show Defendant's decision was unreasonable in light of the information before it at the time of its determination.   *See, e.g., Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1360 (11th Cir. 2008).   "As long as a reasonable basis appears for [the] decision [of the Committee], it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *White v. Coca–Cola Co.,* 542 F.3d 848, 856 (11th Cir. 2008) (citation and internal quotation marks omitted); *see also Martinez-Claib v. Bus. Men's Assur. Co.*, No. 2:06-cv-479-FtM-34SPC, 2008 WL 4791316, at *2 (M.D. Fla. Sept. 9, 2008), *report and recommendation adopted in part*, 2008 WL 4791314 (M.D. Fla. Oct. 27, 2008), *aff'd,* 349 F. App'x 522 (11th Cir. 2009).

It is Plaintiff's burden to establish that she meets the Plan's definition of disability and that Defendant's conclusions were unreasonable.   *Blankenship*, 644 F.3d at 1355.   In short, the challenged benefits decision was not wrong, and, for the reasons discussed above, it was even more decidedly not "arbitrary and capricious."   *See, e.g., Howard v.*

---

[4] Plaintiff does not contest that the Plan confers discretion upon Defendant.   *See* Doc. 32 at 2, ¶2.

*Hartford Life & Accident Ins. Co.*, 563 F. App'x. 658, 663 (11th Cir. 2014) (administrator's decision not arbitrary and capricious where the plaintiff's "credibility was seriously called into question by the surveillance video which shows her engaging in activities grossly inconsistent with her description of her abilities, and in stark contrast to her own treating physicians' assessments, which were based on [her] subjective complaints").

If reasonable grounds exist, the final steps in the review process require the Court to determine whether a conflict of interest exists, and, if so, the Court then considers the conflict of interest as a factor in determining the reasonableness of defendant's denial decision. *See Blankenship*, 644 F.3d at 1354. As for Defendant's conceded structural conflict of interest,[5] even where a conflict of interest exists, the plaintiff continues to bear the burden to demonstrate the decision was arbitrary. *Doyle*, 542 F.3d at 1360. "[I]t is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.* Moreover, the Eleventh Circuit cautions that even where a conflict of interest exists, courts still owe deference to the plan administrator's discretionary decision-making as a whole. *Blankenship*, 644 F.3d at 1355.

Here, Plaintiff makes no arguments and is otherwise silent on the issue of conflict of interest. As such, Plaintiff fails to carry her burden. Furthermore, there is no basis to

---

[5] "A pertinent conflict of interest exists where the ERISA plan administrator both makes the eligibility decisions and pays awarded benefits out of its own funds." *Blankenship*, 644 F.3d at 1355. Here, Defendant concedes that it determines eligibility and is the payer of benefits. (Doc. 28 at 16).

23

conclude that the conflict of interest is a significant factor in this case as Defendant provided a reasonable explanation for its decision, and there is no evidence Defendant's decision was altered due to a conflict of interest.  Therefore, even in light of Defendant's structural conflict of interest, Defendant's decision was reasonable and not arbitrary and capricious.

Accordingly, for the foregoing reasons, it is hereby

**RECOMMENDED**:

1)  Plaintiff's Motion for Summary Judgment (Doc. 26) be denied.

2)  Defendant's Motion for Summary Judgment (Doc. 28) be granted.

**IT IS SO REPORTED** in Tampa, Florida, on this 24th day of January 2019.


_____

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  Fed. R. Civ. P. 72(b)(2).  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit and waives that party's right to challenge anything to which no specific objection was made. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1; Local Rule 6.02, M.D. Fla.


cc:    Hon. James S. Moody, Jr.

25